```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                          COLUMBUS DIVISION
```

A.H. ex rel. SARAH SCOTT and        *
SARAH SCOTT, Individually,
                                    *
    Plaintiffs,
                                    *
vs.                                     CASE NO. 4:20-cv-00100-CDL
                                    *
CALLAWAY GARDENS RESORT, INC.
                                    *
    Defendant.
                                    *

## O R D E R

A.H. was injured while tubing behind a boat operated by an employee of Defendant Callaway Gardens Resort, Inc. ("Callaway"). Before the accident, A.H.'s legal guardians signed a release that waived Callaway's liability for such accidents. Plaintiffs now seek to avoid that release and assert negligence claims against Callaway. It is clear under Georgia law that no basis exists for avoiding this release as to Plaintiffs' claims that are based on Callaway's simple negligence. And even though the release does not cover claims for gross negligence, no evidence exists here from which a reasonable jury could conclude that Callaway was grossly negligent. Therefore, Callaway's motion for summary judgment (ECF No. 31) is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

While visiting Callaway Gardens Resort, A.H. was injured as she rode on a tube that was designed to be pulled behind a motorboat on open water. As a result of the accident, A.H. suffered injuries which caused her pain and suffering and required medical attention with accompanying medical bills. Plaintiffs claim that the boat's operator, a Callaway employee, was negligent by allowing A.H. to ride on the tube at the same time as two of her adult family members, operating the boat at a speed as high as 20 miles per hour, and operating the boat in a manner that caused the tube to go over the boat's wake and thus go airborne. Recognizing that tubing is not risk-free, Callaway requires that its patrons sign a release of liability prior to the activity. This release protects Callaway from legal liability and alerts the patrons to

the risk associated with the activity. Before the accident, A.H.'s legal guardians, Matthew and Nicole Hedlund, signed the liability release on A.H.'s behalf. Def.'s Mot. for Summ. J. Ex. 1, Release 1-2, ECF 31-1 [hereinafter Release]. The Release broadly holds Callaway harmless from liability arising from any "loss, damage, or injury to person . . . regardless of how arising, and however caused . . . [or] with the use of the recreational equipment." Release at 1. Callaway seeks summary judgment based upon the Release.

DISCUSSION

As a condition for participating in the recreational activity of tubing, A.H.'s guardians signed a release on behalf of A.H. in which they: (1) agreed to "hold [Callaway] harmless from any and all liability, claims, damages, actions, and causes of action whatsoever"; (2) released Callaway from liability "regardless of how arising, and however caused"; and (3) recognized the "risks [they] voluntarily assume." Release at 1. The Release does not release Callaway from willful or wanton misconduct, including gross negligence.

It is clear that the Release covers the tubing activity which led to A.H.'s injuries, and that A.H.'s guardians released Callaway from any liability related to that activity, except for liability arising from gross negligence. Plaintiffs have not suggested that A.H.'s guardians did not have the authority to release A.H.'s

3

claims. Nor do they point the Court to any authority that the Release would be void under Georgia law for any reason. *See, e.g., Flood v. Young Woman's Christian Ass'n of Brunswick, Georgia, Inc.*, 398 F.3d 1261, 1264 (11th Cir. 2005) (upholding a fitness club's liability release as valid under Georgia public policy and examining Georgia appellate cases regarding similar releases). A.H.'s guardians clearly released A.H.'s claims for simple negligence.

Plaintiffs argue that the Release applied only to water-skiing, not tubing. This argument is unpersuasive. Although the heading of the document is "WATER SKIING RELEASE OF LIABILITY FORM", the release language is clearly broader than the activity of riding behind a boat on skis. Release at 1. Before a child could participate in a water course recreation activity using Callaway's equipment (including simply riding in a boat), her guardian had to sign the Release. *Id.* The plain language of the Release covers the recreational activity here—being pulled behind a boat on a tube. Titles and headings, while sometimes useful in determining the meaning of a legal text, are "but a short-hand reference to the general subject matter involved . . . [and] cannot undo or limit that which the text makes plain." *Brotherhood of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947). Further, releases need not enumerate every possible risk facing its signatories for the release to exculpate the defendant.

4

*Flood*, 398 F.3d at 1266 (noting that "there is no indication Georgia law requires specific language as to each risk assumed during" activities covered by exculpatory clauses). It is preposterous to suggest that A.H.'s guardians did not know that the Release applied to the tubing activity.

The only claims not covered by the Release are those arising from Callaway's "willful or wanton negligence or misconduct." Release at 1; *accord McClesky v. Vericon Res., Inc.*, 589 S.E.2d 854, 856 (Ga. Ct. App. 2003) (stating that exculpatory clauses are "generally binding absent evidence of gross negligence or wilful or wanton misconduct"). Callaway maintains that it is entitled to summary judgment because no reasonable jury could conclude that its conduct was willful, wanton, or grossly negligent. Georgia law authorizes "[a]n injured party [to] recover for acts of gross negligence despite a valid release for negligence." *Barbazza v. Int'l Motor Sports Ass'n, Inc.*, 538 S.E.2d 859, 861 (Ga. Ct. App. 2000). The Court must therefore determine whether a genuine fact dispute exists as to Callaway's gross negligence.

Gross negligence means the failure to exercise "that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances." O.C.G.A. § 51-1-4; *accord Morgan v. Horton*, 707 S.E.2d 144, 150 (Ga. Ct. App. 2011). "In other words, gross negligence has been defined as equivalent to the failure to exercise even a *slight*

5

degree of care." *Newton v. Jacobs*, 854 S.E.2d 359, 364 (Ga. Ct. App. 2021) (emphasis added) (quoting *Heard v. City of Villa Rica*, 701 S.E.2d 915, 919 (Ga. Ct. App. 2010)). "Generally, when facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable people . . . the right to draw the inference is within the exclusive province of the jury." *Morgan*, 707 S.E.2d at 151 (cleaned up) (quoting *Currid v. DeKalb State Court Probation Dep't*, 618 S.E.2d 621, 626 (Ga. Ct. App. 2005)). Only "[i]n cases wherein the evidence allegedly supporting the accusations of gross negligence is plain and indisputable . . . may [the Court] resolve the questions of whether the defendant acted with gross negligence as a matter of law." *Id*. (quoting *Heard*, 701 S.E.2d at 919).

Even viewed in the light most favorable to the Plaintiffs, the evidence indisputably demonstrates an absence of gross negligence. The facts as to how the accident happened are largely undisputed. The boat operator permitted A.H., who was ten years old, and two adult family members to go tubing together. They certainly understood that the tube would be pulled behind the wake of a motorboat at varying speeds. They also would have understood that being pulled on a body of water behind a boat would involve uneven water and unpredictable wakes. A.H.'s guardians nevertheless allowed A.H. to participate in the tubing and signed the Release that waived any injury that resulted from Callaway's

6

negligence. And quite frankly, the tubing experience proceeded consistent with what Plaintiffs should have expected except for the freakish and unfortunate injury suffered by A.H. The operator allowed all three to ride the tube as the adults requested. He pulled the tube behind the boat at various speeds, which no one estimates exceeded twenty miles per hour. And he pulled them over a wake which caused the tube to go airborne. When A.H. was injured, the boat operator immediately stopped to help her.

Perhaps a reasonable operator using reasonable care would not have allowed all three persons to ride on the tube, and maybe he traveled a little too fast, and someone could opine that he should not have caused the tube to go over the wake, although any reasonable person likely knows that is an essential part of tubing.[1] But these are issues involving simple negligence, not gross negligence. There is no evidence from which a reasonable jury could conclude that the Callaway boat operator did not use even slight care. This is one of those clear cases where summary judgment is appropriate on the issue of gross negligence. *See, e.g.*, *Flood*, 398 F.3d at 1266-67 (finding no fact question on gross negligence where lifeguards guarded a pool with few swimmers,

---

[1] Plaintiffs acknowledge that Callaway boat operators tried to keep boat speed between 18 and 23 miles per hour, that the boat speed here did not exceed 20 miles per hour, that it was common practice at Callaway to put three riders on a tube if the riders requested it, and that it was common practice at Callaway for boat operators to do a jump using the boat's wake if the tube riders granted permission to jump.

7

noticed that the plaintiff's decedent was an excellent swimmer who was spending long periods of time under water as part of his training, and took immediate action when they realized the decedent was in distress); *Morgan*, 707 S.E.2d at 150-54 (finding no fact question on gross negligence where landowner relied on experienced forester service employee's assistance in conducting a controlled burn); *Heard*, 701 S.E.2d at 919 (finding no fact question on gross negligence where volunteer track coach used recognized technique for teaching children how to execute a proper long jump); *Barbazza*, 538 S.E.2d at 861 (finding no fact question on gross negligence where there was no evidence that racetrack operators were required to apply safety guidelines that might have prevented the plaintiff's crash).

The opinions of Plaintiffs' expert do not change this conclusion. The expert opines that Callaway violated certain safety guidelines from the Water Sports Industry Association. But the "failure to apply certain safety standards" does not, by itself, constitute gross negligence. *Flood*, 398 F.3d at 1266. Evidence that a defendant failed to follow safety guidelines will not overcome a motion for summary judgment if the defendant was not required to apply those guidelines. *Id*. In *Flood*, for example, the plaintiff argued that the defendant was grossly negligent because it failed to apply Red Cross lifeguarding standards, but there was no evidence that the defendant was

required to apply those standards.  *Id.* at 1266-67.  Similarly, in *Barbazza*, the plaintiff tried to establish gross negligence by pointing to safety guidelines from a top motor sports authority, but there was no evidence that the defendant was required to apply those standards.  *Barbazza*, 538 S.E.2d at 861-62.  Likewise, here, Plaintiffs did not point to evidence that Callaway was required to apply the Water Sports Industry Association's safety guidelines.[2] Accordingly, Callaway's failure to follow those guidelines does not establish gross negligence.

Plaintiffs also argue that the Callaway boat operator was grossly negligent because he ignored safety information contained in the tube's owner's manual and on the warning label affixed to the tube.  It is undisputed that the boat operator did not read the owner's manual, and Plaintiffs pointed the Court to no authority that his failure to do so was grossly negligent.  There is evidence that the boat operator read warning labels on some of the tubes he pulled and that he followed the warnings of which he was aware.  Blanchard Dep. 49:23-50:2, ECF No. 38-5.  But Plaintiffs did not point to evidence of the exact contents of the

---

[2] Plaintiffs' expert asserts that Water Sports Industry Association's safety guidelines were developed by participating tube manufacturers so they would have uniform warnings on their products. Plaintiffs' expert believes that Callaway was required to follow these industry safety guidelines for tubing, but Plaintiffs did not point to a factual basis for this opinion or any evidence that the Water Sports Industry Association's safety guidelines were mandatory for Callaway.

warning label on the tube A.H. used.[3]  Plaintiffs assert that the label stated that the tube was designed for two riders, prescribed a weight limit, warned not to attempt jumps, and recommended speed limits.  Plaintiff's expert asserts that the Callaway boat operator failed to exercise even slight care by putting three riders on the tube (at their request), underestimating how much the three riders weighed, jumping a wake at the riders' request, and going up to twenty miles per hour at the riders' request.[4]

Even if the Court were to find that Plaintiffs established that these warnings were on the tube, the Court is not convinced that the evidence demonstrates gross negligence.  To find a jury question on gross negligence, the Court would have to determine that the evidence would permit a jury to "reasonably conclude that [the boat operator] failed to exercise even slight care and was therefore grossly negligent."  *Heard*, 701 S.E.2d at 919 (quoting *Pottinger v. Smith*, 667 S.E.2d 659, 661 (Ga. Ct. App. 2008)).  Plaintiffs pointed to no evidence that the boat operator failed to follow the safety training Callaway provided.  Plaintiffs did not point to evidence that Callaway's training program demonstrated a failure to exercise even slight care.  And Plaintiffs did not point

---

[3] Plaintiffs did submit a photograph of a tube like the one A.H. rode, but the warning label is illegible. Pls.' Resp. to Def.'s Mot. for Summ. J. Ex. B-1, Demonstrative of Tube, ECF No. 38-4.

[4] Plaintiffs' expert also referred to "reckless operation of a boat" rules issued by the Georgia Department of Natural Resources, but Plaintiffs did not point to evidence that the boat operator violated these rules.

to evidence that no person of common sense in the boat operator's position would have allowed the three riders on the tube at their request, attempted to jump a wake at the tube riders' request, or towed the tube at speeds up to 20 miles per hour at the tube riders' request. Even if this evidence is sufficient to create a jury issue as to whether the boat operator's actions were simply negligent, there is no evidence from which a jury could reasonably conclude that he failed to exercise even slight care and was therefore grossly negligent. Accordingly, the Court finds that no genuine fact dispute exists as to Callaway's gross negligence, so Callaway is entitled to summary judgment on this issue.

## CONCLUSION

Because A.H.'s guardians signed a valid release of liability that covers the claims Plaintiffs assert here and the present record establishes as a matter of law that Callaway was not grossly negligent, Callaway's motion for summary judgment (ECF No. 31) is granted.

IT IS SO ORDERED, this 21st day of October, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA